IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

OREGON NATURAL DESERT ASS'N,       )
                                    )
                 Plaintiff,         )        Case No. 05-210-KI
                                    )
        vs.                         )        OPINION AND ORDER
                                    )
CARLOS M. GUTIERREZ, Secretary,     )
United States Department of Commerce,)
WILLIAM T. HOGARTH, Director,       )
NOAA Fisheries, and NAT'L MARINE    )
FISHERIES SERV.,                    )
                                    )
                 Defendants.        )

Peter M. Lacy
Oregon Natural Desert Association
917 S. W. Oak Street, Suite 408
Portland, Oregon  97205

Stephanie M. Parent
Pacific Environmental Advocacy Center
10015 S. W. Terwilliger Blvd.
Portland, Oregon  97219

        Attorneys for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Herbert Sundby
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon  97204

Elizabeth J. Shapiro
Assistant Branch Director
Peter T. Wechsler
United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N. W.
Washington, D. C.  20530

        Attorneys for Defendants

KING, Judge:

Plaintiff Oregon Natural Desert Association ("ONDA") challenges the response by NOAA Fisheries,[1] a component of the Department of Commerce, to ONDA's request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Commerce regulations refer some documents to originating agencies for a direct response and set a cut-off date for documents that will be produced.  The issue is whether the regulations are consistent with FOIA.  Before the court are Defendants' Motion to Dismiss the Amended Complaint (#17) and Plaintiff's Motion for Summary Judgment (#19).  For the reasons below, I find that defendants' untimely determination violated FOIA, that the referral regulation does not violate FOIA, and that I must defer ruling on the cut-off regulation.

---

[1]  The agency was formerly known as the National Marine Fisheries Service of the National Oceanic and Atmospheric Administration.

## FACTS

On March 11, 2004, ONDA[2] submitted a FOIA request to NOAA Fisheries Northwest Region which sought numerous types of documents about the effects of livestock grazing on Upper Columbia River Steelhead and Middle Columbia River Steelhead for the years 2003 to present, including any such documents for the 2004 grazing season. The types of documents listed in the request are Endangered Species Act ("ESA") Section 7 consultation documents including biological assessments, biological opinions, letters of concurrence, trip reports, range tour notes, memoranda, emails, letters or other correspondence, notes, reports, and summaries. ONDA had asked for similar information about grazing activities on two previous occasions.

NOAA Fisheries' FOIA Coordinator of the Northwest Region, Nicolle Hill, received the letter on March 17, 2004 and assigned it to the Region's Habitat Conservation Division on March 29, 2004. Hill established the cut-off date for collecting responsive documents to be March 29, 2004.

On April 12, 2004, Hill wrote ONDA seeking a clarification of whether ONDA sought documents it had obtained in two earlier FOIA requests. She also directed ONDA to a web site containing the consultation biological opinions and asked if ONDA wanted copies sent to it.

On April 30, 2004, ONDA wrote back in response that it did not seek records sent for the earlier requests. ONDA also asked if NOAA Fisheries intended to provide documents other than the biological opinions. It noted that the other types of consultation documents would be records created or obtained by the agency and under agency control at the time of the FOIA request and thus would need to be provided under FOIA's definition of agency records.

---

[2] ONDA's communications were from its Staff Attorney, Peter M. Lacy.

On June 15, 2004, ONDA wrote Hill inquiring about the status of the pending request.

On July 1, 2004, Hill wrote ONDA acknowledging the April 30 clarification, stating that NOAA Fisheries had begun searching for responsive records, and agreeing to identify any final biological opinions on the web site that are responsive to the request. Hill concluded by stating that the agency hoped to complete the search, review and duplication of any responsive documents shortly.

On August 18, 2004, Hill wrote ONDA again stating that the agency had begun searching for responsive records. It released 35 documents in their entirety and identified five biological opinions that were available on the web site. Only four of the 35 documents originated after the date of ONDA's request and are dated March 29, 2004; April 2, 2004; April 7, 2004; and April 23, 2004. These four documents originated prior to ONDA's clarification date of April 30, 2004. Hill also stated, "Please be aware that any biological assessments are the primary concern of the federal agency issuing them. Therefore, you would need to send your request tot he [sic] action agencies that may have issued those assessments." Hill Decl. Ex. 6. Again, she hoped to complete the review and duplication of additional responsive documents shortly.

On August 19, 2004, ONDA wrote Hill objecting to her statement that biological assessments were not NOAA Fisheries agency records under FOIA and had to be requested from the originating agency.

Hill wrote ONDA on October 6, 2004 releasing an additional 44 documents and on October 18, 2004 releasing an additional 32 documents.

On November 9, 2004, Hill referred responsive documents to various originating agencies for further action: 24 documents to the Bureau of Land Management ("BLM"), 28 documents to

the US Forest Service ("USFS"), and one document to the US Fish and Wildlife Service ("FWS"). Hill did not copy ONDA on any of these referral letters.

On November 18, 2004, Hill wrote ONDA to release an additional twelve documents. She also gave ONDA the details of the referrals to the three other agencies, including contact information, and stated that ONDA would get a direct response from them.

On December 8, 2004, USFS released 159 pages of material, stating that it believed the release would fully satisfy ONDA's request.

On December 10, ONDA filed an administrative appeal with Commerce objecting to NOAA Fisheries' failure to produce responsive records in a timely manner because it had referred some records to the originating agencies.

On December 20, 2004, William Hogarth, Assistant Administrator for NOAA Fisheries, wrote ONDA that the agency had completed the processing of the FOIA request. The agency withheld 79 documents under two FOIA exemptions and noted that it had produced 128 documents and referred 53 documents to other agencies. The letter explained ONDA's right to appeal within 30 calendar days.

On December 21, 2004, BLM wrote ONDA to release 20 documents and withhold four documents. The letter explained ONDA's appeal rights.

On January 7, 2005, ONDA sent a second FOIA request to NOAA Fisheries, seeking the same information for the period March 2004 to the present. Hill assigned this request for processing and set the cut-off date to be January 10, 2005, the date the agency received the request.

On January 26, 2005, Hill wrote the BLM and USFS to forward the biological

assessments originated at the two agencies which were responsive to ONDA's first request. Hill

explained that she had originally forwarded other responsive documents for determination

without including the biological assessments.

> We did not forward you any Biological Assessments (BA) created by your
> agency. Instead, we told [ONDA] that any BA we had were the primary concern
> of the federal agency who issued them and that he could seek any responsive BA
> directly from the action agencies through FOIA.

> On December 10, 2004, [ONDA] appealed [its] FOIA determination to the
> U.S. Department of Commerce. To ensure compliance, we are directly
> forwarding you the BLM's BA documents we found in our records that are
> responsive to the request for your direct determination and release to [ONDA].

Hill Decl. Ex. 20.

On February 3, 2005, Commerce denied ONDA's appeal after determining that its

referral regulation complied with FOIA.

On February 9, 2005, Hill wrote ONDA to acknowledge the second FOIA request and to

state that the agency had begun searching for responsive records.

On February 16 and March 2, 2005, BLM and FWS wrote ONDA to release documents

responsive to the first FOIA request directly to ONDA. No documents were withheld.

On March 5, 2005, Hill referred documents responsive to the second request to BLM,

USFS, and FWS for direct response to ONDA. ONDA was not copied on the referral letter.

On March 7, 2005, Hill wrote ONDA to inform it that the NOAA Fisheries had

completed processing the second FOIA request. The agency identified 55 responsive documents,

released 20 of them to ONDA with this letter, and referred 35 documents to other federal

agencies. Hill provided contact information at the other agencies. No appeal rights were explained.

The referral agencies released documents directly to ONDA which were responsive to the second request. FWS released one document on March 17, 2005; BLM released 10 documents on March 25, 2005; and USFS released 438 pages on April 11, 2005. The agencies explained the reasons if any documents were withheld. Only BLM explained ONDA's appeal rights.

ONDA's counsel, who was making and tracking the FOIA requests, states that in his experience with the ESA consultation process in the context of the Malheur National Forest's annual consultations with NOAA Fisheries on the proposed livestock grazing authorizations, there would have been a significant number of documents responsive to the March 11, 2004 FOIA request in NOAA Fisheries' possession by March 2005, when the last referral agency released documents responsive to that request. Bill Marlett, ONDA's Executive Director, explains that the grazing season runs from June to October and that USFS often consults on its grazing authorizations on an annual basis. Because of the nature of the issue, Marlett states that the lengthy delays in NOAA Fisheries' responses to FOIA requests impedes the organization's ability to accomplish its goals and mission. According to Marlett, the information is of significantly lesser value if its receipt is delayed until the livestock have been turned out or the grazing season has concluded. Delayed responses during the off-season impede ONDA's ability to monitor the field and assess the success or failure of the grazing authorizations. Marlett states that the cut-off regulation forces ONDA to file the same FOIA request over and over to obtain documents that originate during the months between the request and the response.

On June 10, 2005, ONDA sent a third similar FOIA request to NOAA Fisheries. Based on the letters and release of documents, ONDA believes that NOAA Fisheries is still applying the referral regulation and the cut-off regulation.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

Under the APA, the court may overturn an agency action only if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 377, 109 S. Ct. 1851 (1989); Blue Mountains Biodiversity Project v. Blackwood, 161 F.3d 1208, 1211 (9th Cir. 1998), cert. denied, 527 U.S. 1003 (1999). In determining whether an agency decision is arbitrary and capricious, courts "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Marsh, 490 U.S. at 378. "A decision is arbitrary and capricious if the agency 'has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so

implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" O'Keeffe's, Inc. v. U.S. Consumer Product Safety Comm., 92 F.3d 940, 942 (9th Cir.1996) (quoting Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S. Ct. 2856, 2867 (1983)). The agency must articulate a rational connection between the facts found and the conclusions made. Oregon Natural Resources Council v. Lowe, 109 F.3d 521, 526 (9th Cir. 1997). Review under this standard is narrow, and the court may not substitute its judgment for the judgment of the agency. O'Keeffe's, 92 F.3d at 942.

## DISCUSSION

ONDA challenges the cut-off regulation and the referral regulation, as well as the effect those regulations had on ONDA's March 11, 2004 and January 7, 2005 requests. ONDA alleges that NOAA Fisheries violated FOIA (Claim One) and the APA (Claim Two) when responding to both requests by failing to make a determination within the required 20-day period and by failing to release all responsive, non-exempt documents. In Claim Three, ONDA alleges that the referral regulation violates the APA because it violates FOIA facially and as applied to the March 11, 2004 and January 7, 2005 requests. In Claim Four, ONDA alleges that the cut-off regulation violated FOIA when applied to the March 11, 2004 FOIA request.

I.    FOIA Statutory Provisions and Related Case Law

FOIA provides, in part:

(a)  Each agency shall make available to the public information as follows:

. . . .

(4)(B)  On complaint, the district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

5 U.S.C. § 552(a).

"The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records' or have not been 'improperly withheld.'" United States Department of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3, 109 S. Ct. 2841 (1989). "Agency records" are defined to be materials that the agency either created or obtained and are in control of the agency at the time the FOIA request is made. "Control" is defined to mean that the materials came into the agency's possession in the legitimate conduct of its official duties. Id. at 145 (district court opinions and orders filed in civil tax cases and contained in the case files of the Department of Justice Tax Division were agency records under FOIA).

In addition, FOIA provides:

(6)(A)  Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall --

(i)  determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination; and

(ii) make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal.  If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection.

(B)(i)  In unusual circumstances as specified in this subparagraph, the time limits prescribed in either clause (i) or clause (ii) of subparagraph (A) may be extended by written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched.  No such notice shall specify a date that would result in an extension for more than ten working days, except as provided in clause (ii) of this subparagraph.

(ii)  With respect to a request for which a written notice under clause (i) extends the time limits prescribed under clause (i) of subparagraph (A), the agency shall notify the person making the request if the request cannot be processed within the time limit specified in that clause and shall provide the person an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request.  Refusal by the person to reasonably modify the request or arrange such an alternative time frame shall be considered as a factor in determining whether exceptional circumstances exist for purposes of subparagraph (C).

(iii) As used in this subparagraph, "unusual circumstances" means, but only to the extent reasonably necessary to the proper processing of the particular requests –

(I) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request;

(II) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or

(III) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

. . . .

(C)(i) Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph. If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records. Upon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request. Any notification of denial of any request for records under this subsection shall set forth the names and titles or positions of each person responsible for the denial of such request.

(ii) For purposes of this subparagraph, the term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.

(iii) Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) under clause (ii) after being given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph.

Id. § 552(a)(6).

II.    Mootness

Defendants note that they released all responsive documents and that ONDA does not challenge either the adequacy of the search for responsive documents conducted by NOAA Fisheries or its reliance upon FOIA exemptions to withhold some documents. Defendants contend that ONDA's claims are moot because of the release of the documents. Defendants also argue that ONDA's assertion that the documents were time sensitive is undercut by its delay in bringing suit and its failure to raise all claims in the administrative appeal.

The government relies on cases which hold that a claim for relief under FOIA becomes moot once the agency produces all responsive documents. See Anderson v. United States Department of Health and Human Services, 3 F.3d 1383, 1384 (10th Cir. 1993) (agency eventually provided copies documenting a private corporation's development and testing of liquid silicone products after the corporation no longer asserted a claim of confidentiality); Carter v. Veterans Administration, 780 F.2d 1479, 1481 (9th Cir. 1986) (agency eventually provided copies of all rules and regulations concerning corroborative evidence requirement for benefits).

ONDA argues that its issue falls within the voluntary cessation exception to the mootness doctrine because NOAA Fisheries and the other federal agencies produced the documents only after ONDA filed suit but before this court issued an order requiring production. Without a declaration that the prolonged delays are unlawful, ONDA is concerned that it will face the same situation again.

Defendants contend that this narrow exception does not apply because there is no pattern or practice of delay in processing FOIA requests. Defendants also claim there is no reasonable expectation that ONDA will be subject to the same unlawful actions again, a required element of a pattern or practice claim. Defendants argue that the court cannot consider ONDA's other similar requests because ONDA did not exhaust administrative remedies concerning them and the Amended Complaint does not address them. Defendants characterize ONDA's statement of intent to file additional claims in the future as speculative. Defendants also point to the steps NOAA Fisheries took to process the requests before ONDA brought suit, in contrast to a situation where an agency takes no steps until suit is filed. Based on this difference, defendants contend that there is no evidence that it will depart from its pattern of processing requests after the litigation is concluded.

"[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. . . . A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Friends of Earth v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 191, 189, 120 S. Ct. 693 (2000) (internal quotation omitted). The voluntary cessation exception to mootness has been applied to FOIA cases in which the agency released the

documents prior to the court's decision. <u>Payne Enterprises, Inc. v. United States</u>, 837 F.2d 486 (D.C. Cir. 1988). Even though the party had obtained relief for the specific request, the release of documents did not moot the claim that the agency policy or practice impaired the party's lawful access to information in the future. <u>Id.</u> at 491.

Defendants' argument is not persuasive. ONDA is not using its other filings to gain specific relief in those instances. Instead, it uses them to demonstrate that it frequently makes FOIA requests and has repeatedly faced the same challenged regulations. Thus, whether it exhausted its administrative remedies for the other filings is of no importance. The cases defendants cite are one-time challenges to a failure to release documents. Although ONDA clearly wanted the documents which were eventually released here by defendants, ONDA is also concerned about its ability to obtain documents in light of the two regulations at issue. I do not view ONDA's arguments to be speculative in light of its FOIA request record. Moreover, I cannot conclude that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." <u>Friends</u>, 528 U.S. at 189. Accordingly, I find that the case is not moot.

III.    <u>Exhaustion of Administrative Remedies</u>

Defendants note that ONDA failed to raise the issue of the cut-off regulation in its administrative appeal on the March 11, 2004 request. Defendants argue that Claim Four, which addresses that regulation, is barred because ONDA failed to exhaust its administrative remedies.

ONDA relies on the provision in FOIA that a requester is deemed to have exhausted administrative remedies if the agency fails to comply with the time limit in the act. It argues that

defendants cannot raise this defense because NOAA Fisheries did not properly respond prior to ONDA filing suit. ONDA contends that under defendants' argument, ONDA would have been required to anticipate claims that theoretically may have arisen by the time NOAA Fisheries completed its processing of the request. Since production continued after ONDA filed suit, it could not have seen the effect of the cut-off policy at the time it filed the administrative appeal. ONDA also argues that FOIA does not allow for interim or partial determinations.

Defendants contend that NOAA Fisheries did respond prior to ONDA filing suit on February 14, 2005. Defendants point to the acknowledgement of receipt of clarification on the scope of the first request and notice that the agency had started searching for responsive documents, the release of responsive documents, the referral of additional documents to the originating agencies for a direct response, and notification that NOAA Fisheries had completed processing the first request. Concerning the second request, defendants note that prior to this suit being filed, NOAA Fisheries referred documents to originating agencies for direct response, acknowledged receipt of the request, and provided notice that it had commenced searching for responsive records. Based on these actions, defendants argue that Commerce did provide a determination on the two requests. Defendants further contend that Commerce was not required to give notice of the right to appeal before December 20, 2004, the date on which the agency completed its processing of the first FOIA request and identified the statutory exemption under which it withheld documents.

> [W]e find that 5 U.S.C. § 552(a)(6)(C) permits a requester to file a lawsuit when ten days have passed without a reply from the agency indicating that it is responding to his request, but that this option lasts only up to the point that an agency actually responds. Once the agency has responded to the request, the petitioner may no longer exercise his option to go to court immediately. Rather,

the requester can seek judicial review only after he has unsuccessfully appealed to the head of the agency as to any denial and thereby exhausted his administrative remedies. Thus, if the agency responds to a FOIA request before the requester files suit, the ten-day constructive exhaustion provision in 5 U.S.C. § 552(a)(6)(C) no longer applies; actual exhaustion of administrative remedies is required.

Oglesby v. United States Dept. of Army, 920 F.2d 57, 61 (D.C. Cir. 1990).

A response is sufficient to trigger the need for an administrative appeal if it includes "the agency's determination of whether or not to comply with the request; the reasons for its decision; and notice of the right of the requester to appeal to the head of the agency if the initial agency decision is adverse." Id. at 65.

The response to ONDA's first FOIA request was so piecemeal that it is difficult to apply the statute to the situation. I believe the following dates are the most relevant:

| | |
|---|---|
| April 30, 2004 | ONDA clarified its request |
| July 1, 2004 | NOAA Fisheries acknowledged that the search had begun |
| December 10, 2004 | ONDA filed its administrative appeal (without the cut-off regulation issue) |
| December 20, 2004 | NOAA Fisheries wrote that search was complete; listed documents withheld, produced, or referred; gave appeal rights |
| February 3, 2004 | Commerce denied ONDA's appeal |
| February 14, 2005 | ONDA filed suit in federal court |
| February 16 and March 2, 2005 | BLM and FWS released documents |

Applying Oglesby, ONDA could have filed this action, relying on constructive exhaustion, ten days after clarifying its request on April 30, 2004. That option remained open until NOAA Fisheries responded in a manner sufficient to trigger the need for an administrative

appeal.  An adequate response did not occur until December 20, 2004, when NOAA Fisheries'
search was complete and appeal rights were given to ONDA.  Under Oglesby, this would have
cut off ONDA's ability to use constructive exhaustion and turn straight to federal court.  The
difficulty in applying Oglesby to this situation is that ONDA filed an administrative appeal ten
days earlier.  If ONDA had filed the federal action ten days earlier, the cut-off regulation issue
would be constructively exhausted.  Moreover, the other agencies were still releasing documents
after ONDA filed the federal action.  I agree with ONDA that the effect of the cut-off regulation
was not obvious at the time of the administrative appeal or even when the federal action was
filed.  I note that Claim Four was first alleged in the First Amended Complaint filed on
February 18, 2005.

In light of these factors, I conclude that ONDA has adequately exhausted its
administrative remedies on Claim Four.

IV.    Ripeness

ONDA seeks an injunction prohibiting the use of the referral and cut-off regulations in
the future.  Defendants argue that this request is not ripe because it rests upon contingent future
events that may not occur as anticipated.  Defendants also note that Commerce clarified the
cut-off regulation by issuing guidance that an agreement to narrow the scope of a FOIA request is
deemed a new request for purposes of establishing the cut-off date.

ONDA again notes that it frequently files FOIA requests and has had to endure long waits
in June 2003 and January 2004 in addition to the waits for the two requests at issue in this case.
ONDA also filed a new request on June 10, 2005 which is similar to the requests at issue here.

ONDA claims that it is forced to submit this many requests because of the lengthy response times and the cut-off date policy. ONDA also notes that the new guidance concerning modified requests does not solve the problem when NOAA Fisheries takes months to complete its search but then withholds responsive documents that originated throughout the pendency of the search period.

"'A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Cardenas v. Anzai, 311 F.3d 929, 934 (9th Cir. 2002) (quoting Texas v. United States, 523 U.S. 296, 300 (1998)).

For the reasons stated in my analysis of mootness, I find that the issues before me are not based on contingent future events. I also find that the recent clarification of the cut-off regulation does not adequately address the issue. As demonstrated here, there can still be a lag time of many months between the updated cut-off date, based on the date of the clarification, and the search for documents. Thus, I conclude that the issues are ripe for review.

V.      Timeliness of Response

ONDA alleges that NOAA Fisheries violated FOIA by failing to make a determination within the 20-working day statutorily prescribed time period and by failing to timely release all responsive, nonexempt documents requested in the March 11, 2004, and January 7, 2005 requests. Even if the court finds the referral regulation lawful, ONDA contends that a violation occurred because the agency still failed to make its determination within the time limits. ONDA claims this is an improper withholding under FOIA.

Defendants contend that FOIA does not require that the processing and release of documents occur within the 20-day statutory period. Defendants interpret the act to require that records be made promptly available after the determination has been made to comply with the request.

FOIA requires the agency to determine within 20 days whether to comply with the request and provide certain notifications to the requester. The agency can give written notice of a ten-day extension. If the agency can show that exceptional circumstances exist and that it is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records. 5 U.S.C. § 552(a)(6)(A)(i), (B)(i), (C); see Mayock v. Nelson, 938 F.2d 1006, 1007 (9th Cir. 1991).

NOAA Fisheries responded well past the statutory time limits, with the first request extending from April 30, 2004 to a response on December 20, 2004 and the second request occurring on January 7, 2005 but never receiving a technically complete response. The information provided on March 7, 2005 did not explain ONDA's appeal rights. For both requests, documents were sent even later from other agencies.

Defendants relied on their mootness argument and did not attempt to establish the exceptional circumstances with due diligence exception. Thus, I find that defendants failed to make a timely determination, resulting in an improper withholding under the Act. I also adopt the holding in Gilmore v. United States Dept. of Energy, 33 F. Supp. 2d 1184, 1188 (N.D. Cal. 1998) (untimely determination constituted an improper withholding in violation of FOIA, even though the documents were later correctly determined not to be subject to disclosure), that an

untimely response is a violation of FOIA, regardless of the final outcome of the request. I grant

summary judgment in ONDA's favor that it is entitled to a declaratory judgment for Claim One

(FOIA violation) and Claim Two (APA violation for an agency action that is not in accordance

with the law).

VI.     Referral Regulation

The regulation to which ONDA objects states:

> Consultations and referrals. If a component receives a request for a record
> in its possession in which another Federal agency subject to the FOIA has the
> primary interest, the component shall refer the record to that agency for direct
> response to the requester. Ordinarily, the agency that originated a record will be
> presumed to have the primary interest in it. A component shall consult with
> another Federal agency before responding to a requester if the component receives
> a request for a record in which another federal agency subject to the FOIA has a
> significant interest, but not the primary interest; or another Federal agency not
> subject to the FOIA has the primary interest or a significant interest (see Sec. 4.8
> for additional information about referrals of classified information).

15 C.F.R. § 4.5(b).

Defendants rely on FOIA's statutory provision allowing one agency to consult with

another that has a substantial interest in the determination of the request. 5 U.S.C.

§ 552(a)(6)(B)(iii)(III). Defendants argue that the referral regulation improves the ability of the

government to determine if responsive documents are exempt from disclosure because the

originating agency is in a better position to decide if a document fits within a statutory

exemption. They contend that NOAA Fisheries did not withhold the documents if they were

released by the originating agency after referral. Defendants also argue that the referral does not

significantly increase the time the requester must wait.

ONDA argues that court approval of other referral practices required that the practice did not result in unlawful withholdings, violations of the statutory time lines, or a requirement that the requester had to deal with two or more independent administrative forums. ONDA also notes that the requested documents are time sensitive, making the delay even more problematic. It notes that the referrals on ONDA's requests required it to juggle multiple responses from four different federal agencies about documents which all were in NOAA Fisheries' possession. Compounding the problem, some of the agencies notified ONDA of a right to appeal the response while others did not provide notice.

Both sides rely on McGehee, III v. Central Intelligence Agency, 697 F.2d 1095 (D.C. Cir.), vacated in part on other grounds, 711 F.2d 1076 (1983), to support their arguments. Additionally, defendants do not dispute that the referred documents are NOAA Fisheries' agency records. "[A]ll records in an agency's possession, whether created by the agency itself or by other bodies covered by the Act, constitute agency records." Id. at 1109.

The adequacy of an agency's response to a FOIA request is measured by a standard of reasonableness. Id. at 1100. FOIA prohibits the improper withholding of documents. 5 U.S.C. § 552(a)(4)(B). Applied to referral regulations, "a system adopted by an agency for dealing with documents of a particular kind constitutes 'withholding' of those documents if its net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them." McGehee, 697 F.2d at 1110. "Withholding" in this situation is deemed "improper" unless the agency can offer a reasonable explanation for its procedure. Id.

McGehee concluded that there was insufficient evidence in the record to apply the standard and remanded for the submission of additional evidence. This was in light of the court's knowledge that most of the documents were classified by the originating agency and could not be declassified by the agency receiving the FOIA request. Additionally, the District Court had stated that the agency generating the documents is in the best position to determine expeditiously and efficiently the propriety of disclosure. The appellate court held that a "more particularized finding of advantage, in terms of the quality of the substantive review, is necessary to justify a referral." Id. at 1111 n.71. Other courts have not required such a high showing to justify a referral. See Stone v. Defense Investigative Service, No. Civ. A 91-2013 SSH, 1992 WL 52560, *1 (D.D.C. Feb. 24, 1992) (referral "enables the originating agency to prepare affidavits concerning the document and any applicable exceptions, or to authorize its release"), aff'd, 978 F.2d 744 (D.C. Cir. 1992).

Brenda Dolan, FOIA and Privacy Act Officer for the Department of Commerce, explains that the basis for the presumption in the referral regulations is that the originating agency is generally in a better position than the Department component to determine whether the requested information is subject to an exemption from disclosure under FOIA. This strikes me as a reasonable explanation. I decline to follow McGehee in requiring more particularized findings and instead will concentrate on whether the net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them.

I first note that the regulation does not require a requester to make separate requests to the various agencies who may be the originators of the documents. Instead, Commerce makes the

Page 22 - OPINION AND ORDER

requests for the requester. This is one factor that <u>McGehee</u> noted would be problematic in justifying a referral procedure. <u>McGehee</u>, 697 F.2d at 1110, 1112. The complexity of the response which ONDA had to sort through concerns me, however. Once documents are referred to other agencies, the responses are not funneled back through the Commerce component. Thus, ONDA was getting responses, released documents, and withheld documents from four agencies instead of one. These agencies also responded in piecemeal fashion in releasing their documents. Some, but not all, gave an appeal notice when their processing was complete.

Although the confusion is bothersome, I believe that requiring the responses from the other agencies to funnel back through Commerce would only increase the time required to get the records. There is also no evidence that consultation with the other agencies, rather than a complete referral, would shorten the response time. Thus, I conclude that the referral regulation does not significantly impair the ability to get records.

I now turn to whether the regulation significantly increases the time to get records. ONDA clarified its request on April 30, 2004. NOAA Fisheries referred documents on November 9, 2004 and January 26, 2005. The referral agencies released documents from December 8, 2004 through March 2, 2005. Thus, over six months occurred prior to the first referral but documents started being released only a month later. The delays occurred within NOAA Fisheries and were not the result of the referral regulation. Accordingly, I conclude that the referral regulation did not significantly increase the time to get the records.

In summary, the referral regulation is reasonable and meets the standard stated in

McGehee.  Consequently, I grant summary judgment in defendants' favor and dismiss Claim

Three.

VII.    Cut-Off Regulation

ONDA challenges the following regulation:

Records responsive to a request shall include only those records within the
department's possession and control as of the date the proper component receives
the request.

15 C.F.R. § 4.5(a).

Commerce circulated this memorandum on June 2, 2005:

This is to advise you of guidance in applying 15 C.F.R. § 4.5(a), the
Department's FOIA regulation establishing the cut-off date for locating records
responsive to a FOIA request, to requests that have been clarified by the
requestor [sic].  In cases where a request requires clarification, the component
must contact the requester promptly upon receipt of the request to obtain
clarification.  The date that clarification (which includes modification of a
request) is received is deemed the date that the request is received, both for
purposes of setting a cut-off date and for calculating the date by which the
response is due.

Dolan Decl. Ex. B.

Defendants argue that it is proper to use a FOIA request's date of receipt as the cut-off

date when processing documents.  Brenda Dolan, FOIA and Privacy Act Officer for the

Department of Commerce, states that establishing a cut-off date is important to assure that each

component and subcomponent of the agency searching for records responsive to a FOIA request

applies uniform search parameters.  Dolan believes that in most cases, the date a FOIA request is

received, or the date of a clarification of that request, is the same as or close to the date on which

the component starts the search for responsive documents because the receipt of a request is the first step in conducting the search. Thus, defendants argue that the cut-off date does not cause a significant difference in what documents are provided, particularly in light of the new guidance about modified requests.

ONDA contends that FOIA entitles it to receive all responsive documents in NOAA Fisheries' possession or control up to or near the date of the release of records. When there is a months long delay between the date-of-request cut-off date and the search, requesters are forced to periodically resubmit identical requests to get more recent records which originated in the intervening months. ONDA notes that NOAA Fisheries completed its response to ONDA's March 11, 2004 request on March 2, 2005 but produced no record more recent than April 23, 2004, leaving ten months unaccounted for and forcing ONDA to file the January 7, 2005 request for the same documents. I note that the second request resulted in 55 more documents.

Again, both sides rely on McGehee to support their arguments. Reasonableness is again the standard to be applied. McGehee, 697 F.2d at 1100-01. The agency has the burden of persuasion that any limitations it imposes on a search "comport with its obligation to conduct a reasonably thorough investigation." Id. at 1101. McGehee held that the agency before it did not adequately substantiate its date-of-request cut-off policy when documents were not disclosed until nearly two and one-half years after the original request. The agency had relied on arguments concerning administrative nightmares, confusion by different agency components performing the search, precision of the search, and additional costs of successive searches. Id. at 1103-04. The court offered a sample procedure in which a preliminary search would be done by agency components likely to have responsive documents, the requester is notified that the agency

Page 25 - OPINION AND ORDER

has documents and will fully process the request when it reaches the front of the queue, and when that occurs, a thorough search is performed for all documents possessed as of the search date. Id. at 1104. The court also realized that there might be persuasive, but undisclosed, reasons for the agency's current procedure. It remanded to allow the agency a chance to adduce additional and more detailed evidence to persuade the district court that its present practice was reasonable. Id.

The District of Columbia Circuit followed McGehee's analysis in a more recent case, Public Citizen v. Dept. of State, 276 F.3d 634 (D.C. Cir. 2002), to hold that the date-of-request cut-off policy was unreasonable generally and as applied to the FOIA request before the court. The agency proffered two unpersuasive justifications. First, the court was unconvinced that a later cut-off date would result in a longer wait for the requester because the policy forced requesters into making multiple requests to get more recent records. Second, although the agency wanted to use a uniform date when tasking multiple agency components to perform the search, the court concluded that a date-of-search cut-off could be used in the one component that had the most records and the longest processing queue. Id. at 643-44.

Defendants have not given me enough information about what actually happens during these prolonged searches for me to determine whether the cut-off date regulation is reasonable. I agree that some cut-off date is likely needed, if for no other reason than to let the requester track whether to submit a follow-up request. It is unclear to me, however, whether most of the time between the request and the response, or multiple responses as occurred here, is spent actually searching. It is possible that the request is awaiting its turn for processing during the vast majority of the months that pass. I also do not understand how much complication arises when searches must be performed by multiple components of the agency. Similarly, I do not know

Page 26 - OPINION AND ORDER

why responses came out in dribs and drabs rather than all at once.  Although it seems to me that a later cut-off date could be used, I am suspicious that the process is more complicated than I envision based on the record before me.  Consequently, I will take the suggestion in <u>McGehee</u> and defer ruling on this issue to allow defendants to provide additional evidence explaining the process and more specific reasons for the date-of-request cut-off date.

## CONCLUSION

Defendants' Motion to Dismiss the Amended Complaint (#17) is granted in part. Plaintiff's Motion for Summary Judgment (#19) is granted in part.  A status conference will be held shortly to discuss how to proceed.

IT IS SO ORDERED.

Dated this _____9th_____ day of January, 2006.


___/s/ Garr M. King_____
Garr M. King
United States District Judge